# EXHIBIT 1

**To the Memorandum of Law of Twentieth Century Fox Film Corporation in Support of Its Motion to Dismiss the Amended Complaint**

7. The Board is a "board" as defined by Fla. Stat. §286.011(1). It is clear from the evidence presented that the purpose for the Board is to make policy recommendations. The policy recommendations are made by the Board following "give and take" discussions by the Board members in which the Board members seek to forge a consensus on deadly force policy. By creating this Board, the City, through the Chief of Police, created a board to which the requirements of the Sunshine Law apply. See *Wood v. Marston*, 442 So. 2d 934 (Fla. 1983); *Krause v. Reno*, 366 So.2d 1244 (Fla. 3d DCA 1979); AGO 078-105; AGO 084-70.

8. The City has advanced the argument that the Board is merely a fact-finding organization. However, the written Standard Operating Procedure under which the Board operates, the organizational makeup of the Board, the Board reports admitted as evidence, and the testimony of the Chief of Police refute this position. The presence of a "community representative" on the Board is significant. This demonstrates that the City is seeking some measure of public input into the policy process, and, among other facts present in this case, refutes the City's argument that the Board constitutes the "staff" of the Police Chief. Further, the reports, minutes, and tapes of the Board meetings have been routinely made available for public inspection after the Board has completed its process.

9. The fact-finding process is conducted by the Police Department Internal Affairs Unit. The Internal Affairs Unit reports to the Chief on what has occurred. The Board recommends to the Chief what he should do about what has occurred. As stated in *Krause v. Reno, supra*, "There can be no doubt that an advisory board appointed to make recommendations to an appointing authority is subject to the dictates of the Sunshine Law." 366 So.2d 1244 at 1251. The Board is therefore a part of the decision-making process regarding policy on deadly force usage by the City Police Department, and is subject to the Sunshine Law.

10. The Sunshine Law is a keystone to government in this state. Openness of governmental proceedings gives the public the opportunity to be involved in free discussion regarding governmental policy. Openness promotes a perception of fairness and acts as a check on corruption by exposing the process to public scrutiny. Openness encourages the participants in the process to be more conscientious in their decisions, behavior, and recommendations. This Court rejects the City's contention that the presence of the public at meetings of the Board would be detrimental to the Board's processes or that public presence would interfere with the free exchange of information and ideas among the Board members.

11. The Board's closed meetings during the week of May 29, 1989 were in violation of Fla. Stat. §286.011. Under Florida law, a showing that §286.011 has been violated constitutes conclusive proof of irreparable public injury. *Town of Palm Beach v. Gradison*, 296 So.2d 473 (Fla. 1974).

WHEREFORE, based on the foregoing, this Court orders and adjudges as follows:

A. The declaratory relief sought by the City is denied. *Askew v. City of Ocala*, 348 So.2d 308 (Fla. 1977). The City's Motion to Dismiss Counterclaim and Motion for Award of Costs and Attorney's Fees are denied. The relief sought by Sentinel is granted.

B. The City and Board are enjoined and restrained from conducting any proceedings of the Board that are closed to the public at which any act of the Board is or may be taken.

C. This Court retains jurisdiction of this matter for purposes of considering the taxation of costs and attorney's fees against the City pursuant to Fla. Stat. §286.011(4).

---

# MARQUETTE v. WARNER BROTHERS INC.

New York Supreme Court
New York County

MARQUETTE v. WARNER BROTHERS INC., July 6, 1989

**REGULATION OF MEDIA CONTENT**

Privacy—Statutory right to privacy—State statutory protections—New York Civil Rights Law (§13.0502.02)

Use, in movie about public figure's life and music, of character who is allegedly based on plaintiff but who is on screen for only approximately three seconds is incidental and thus does not give rise to cause of action for invasion of privacy under

16 Med. L. Rptr. 1958 *Doe v. ABC*

Sections 50 and 51, New York Civil Rights Law.

---

Invasion of privacy action against movie producer. On defendant's motion to dismiss.

Granted.

*Full Text of Opinion*

Tompkins, J.:

Defendant Warner Brothers, Inc.'s ("Warner Bros.") motion to dismiss complaint for failure to state a cause of action and plaintiff's cross motion for summary judgment are consolidated for disposition and decided as noted below.

Plaintiff alleges that a movie produced and distributed by Warner Bros. about the life and music of Charlie "Bird" Parker, entitled "Bird" portrayed plaintiff on screen without his consent.

Plaintiff William Clayton Marquette, a/k/a "Pee Wee" Marquette, was the Master of Ceremonies ("MC") at a club in New York City called "Birdland," at which Charlie Parker often appeared. In the movie "Bird," there is a short sequence of approximately three seconds in length in which the MC appears on stage. Although the MC is not identified by name during this short interval, he is identified as a character named "Pee Wee" Marquette, played by actor Tony Cox in the credits. In the first cause of action in the complaint, plaintiff alleges that the unauthorized portrayal of himself on screen violates his statutory right to privacy governed by New York Civil Rights Law § 51. Plaintiff seeks an injunction to prevent defendants from showing the film to the public because plaintiff alleges he has been "subjected to embarrassment and ridicule" in that his claim to be "Pee Wee" Marquette has been challenged by those who have seen the film. In the second cause of action, plaintiff contends that as a result of the skepticism of his friends regarding whether he was ever the MC at Birdland, plaintiff has suffered emotional damage and he seeks compensatory damages. In the third cause of action, plaintiff alleges that he notified Clint Eastwood, the producer of the movie, that he would be available to appear in the film as the MC at Birdland. Plaintiff received no response to his request. Plaintiff claims the defendant's failure to obtain his written consent prior to allowing his character to be portrayed on screen by an actor and to be identified in the credits warrants punitive damages. Civil Rights Law, §§50, 51 were promulgated to prevent the commercial exploitation of a person's name, picture, or likeness without obtaining his or her prior consent, see Freihofer v. Hearst Corp., 65 NY2d 135 [1981].

Section 50 provides that the unauthorized use of a person's name, picture or likeness for advertising or trade purposes constitutes a misdemeanor. Section 51 provides for the recovery of damages for such conduct.

Even if, accepting every one of plaintiff's allegations as true and giving ever favorable inference to those allegations, the court were to find that the movie about Charlie Parker's life and music were not a subject of public interest which would take the unauthorized use out of the domain of Sections 50 and 51, see Arrington v. N.Y. Times, 55 NY2d 433 [1982], rearg. denied, 57 NY2d 669, cert. den., 459 US 1146; the allegations in the complaint still do not state a cause of action for violation of Sections 50 and 51 because the unauthorized use was merely incidental. The incidental use of a person's name or photograph, whether in the context of a documentary or even a fictional story, falls outside the right to privacy created by Sections 50 and 51, see De Gregorio v. CBS, Inc., 123 Misc. 2d. 491 (Sup. Ct., N.Y. Cty [1984]). In the case at bar, the character that played the role of the MC was on screen for approximately three seconds out of defendant's full length movie. This use in the context of a movie about a public figure's life and music is merely incidental and therefore cannot establish liability under Civil Rights Law, §§50, 51, De Gregorio, supra.

Accordingly, defendants' motion to dismiss is granted and cross-motion for summary judgment is denied.

Settle order.

---

# DOE v. AMERICAN BROADCASTING COMPANIES

**New York Supreme Court Appellate Division First Department**

JANE DOE, et al., v. AMERICAN BROADCASTING COMPANIES INC., et al., No. 37251, July 13, 1989